UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

K & D Industrial Services
Holding Co., Inc., *et al.*,[1]

    Debtors.
_____/

Chapter 11
Jointly Administered
Case No. 19-43823
Hon. Phillip J. Shefferly

## OPINION DENYING MOTION FOR STAY PENDING APPEAL

### Introduction

This matter is before the Court on a motion for stay pending appeal. The Court granted three separate motions for sales of assets by the debtors in these jointly administered Chapter 11 cases. A pension fund objected to all three motions to the extent that they requested a finding under § 363(f) of the Bankruptcy Code that the sales were made free and clear of a possible liability to the pension fund. On May 24, 2019, the Court heard the motion for stay pending appeal and denied it. This opinion supplements the explanation for the Court's ruling made on the record at that hearing.

---

[1] The following cases are being jointly administered for procedural purposes only and include: K & D Industrial Services Holding Co., Inc. (case no. 19-43823; K & D Industrial Services, Inc. (case no. 19-43824); K&D Industries, Inc. (case no. 19-43825); K & D Grand Rapids, Inc. (case no. 19-43826); K & D Industries of Ohio, Inc. (case no. 19-43827); K & D Industrial Services Midwest Inc. (case no. 19-43828); K & D Industries West, Inc. (case no. 19-43829); and L & P Industries LLC (case no. 19-43830).

## Background

The eight debtors ("Debtors") in these Chapter 11 cases are all engaged in environmental and industrial services. On March 15, 2019, they all filed Chapter 11 petitions. During the Chapter 11 cases, the Debtors have filed three separate motions for approval of sales under § 363(b) of the Bankruptcy Code, each with a request that the sale be made free and clear of all claims and interests under § 363(f) of the Bankruptcy Code. After setting detailed bid procedures for each of the three proposed sales, the Court held hearings on all three sale motions. The only party who objected to the three sale motions was the Operating Engineers Local 324 Pension Fund ("Pension Fund"), a multi-employer pension fund. The Pension Fund stated that it did not object to any of the sales, but only to the sale motions' requests that the sales be made free and clear of any potential liability to the Pension Fund.

On May 9, 2019, the Court held a hearing on the first sale motion, which requested approval of an asset purchase agreement with Cleaning Contractors, Inc. ("CCI"). On May 16, 2019, the Court overruled the Pension Fund's objection and issued an Opinion Granting Debtors' Motion for Approval of Sale of Assets Free and Clear of Claims and Interests ("Opinion") (ECF No. 155). On May 17, 2019, the Court held a hearing on the second sale motion, which requested approval of an asset purchase agreement with Strength Environmental, LLC ("Strength Environmental").

On May 24, 2019, the Court held a hearing on the third sale motion, which requested approval of an asset purchase agreement with Job Site Services, Inc. ("Job Site"). Because the Pension Fund made the same objection to all three motions, the Court adopted the ruling and analysis in the Opinion that it entered with respect to the first sale motion and applied it to the second and third sale motions. The Pension Fund has appealed from the orders approving the sales to CCI and Strength Environmental, and has stated that it intends to also appeal from the order approving the sale to Job Site.

On May 20, 2019, the Pension Fund filed a motion for stay pending appeal ("Motion") (ECF No. 161). The Motion requests that the Court stay its orders granting all three sale motions, so that none of the three sales are closed while the Pension Fund's appeal is pending. On May 23, 2019, the Debtors filed a response (ECF No. 176) to the Motion. The same day, Chemical Bank, which holds a security interest in all of the assets to be sold, filed a concurrence (ECF No. 177) in the Debtors' response. On May 24, 2019, the Court heard the Motion.

## Motion for Stay Pending Appeal

Federal Rule of Bankruptcy Procedure 8007(a)(1) authorizes a bankruptcy court to grant a stay of a judgment or order pending appeal. In <u>Michigan Coalition of Radioactive Material Users Inc. v. Griepentrog</u>, 945 F.2d 150 (6th Cir. 1991), the Sixth Circuit Court of Appeals explained that in considering whether to grant a motion

for stay pending appeal, a court should consider the same four factors that are traditionally considered in evaluating the issuance of a preliminary injunction.

> These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.

Id. at 153 (citations omitted). "[T]he moving [ ] party has the burden of showing it is entitled to a stay." Serv. Emps. Int'l Union Local 1 v. Husted, 698 F.3d 341, 343 (6th Cir. 2012) (citation omitted).

### 1. Does the Pension Fund have a strong and substantial likelihood of success on the merits of its appeal?

The Pension Fund makes three points in support of its argument that it has a strong or substantial likelihood of success on the merits of its appeal of the Opinion. First, it notes that the Opinion "clearly was not a decision that this Court easily arrived at." The Pension Fund points out that after the Court heard the first sale motion on May 9, 2019, it took the Court a week to write the Opinion. This fact suggests to the Pension Fund that its objection "was a substantial issue and one that was worth of due deliberation and consideration." The Court does not disagree. The Pension Fund's objection was not a frivolous one and it was an issue that did require due deliberation by the Court. But that does not mean that the Pension Fund has a strong or substantial

likelihood of success on the merits of its appeal. If anything, it suggests the opposite: the Court spent considerable time deliberating on the objection raised by the Pension Fund and did not either overlook it or dismiss it out of hand.

Second, the Pension Fund cites Sixth Circuit opinions that it believes support its position that the Court erred in the Opinion. But these are the same citations and the same arguments that the Pension Fund made to the Court when the Court heard the Pension Fund's objection. All of these issues are covered by the Opinion. Rehashing the same arguments already rejected by the Court does not mean they are likely to prevail on appeal.

Third, the Pension Fund notes that the Sixth Circuit has never previously addressed the specific issue in the Opinion — that is, whether a purchaser of assets in a § 363 sale can obtain such assets free and clear of possible successor liability in the future to the Pension Fund. While it appears true that the Sixth Circuit has not considered this issue on specific facts before the Court, that does not mean that the Pension Fund has a strong or substantial likelihood of success on the merits of its appeal.

The Pension Fund raised a serious legal objection to the Debtors' sale motions. The Court carefully considered and rejected it in the Opinion. The Pension Fund has

-5-

19-43823-pjs    Doc 198    Filed 05/28/19    Entered 05/28/19 14:26:42    Page 5 of 11

likelihood of success on the merits of its appeal. If anything, it suggests the opposite: the Court spent considerable time deliberating on the objection raised by the Pension Fund and did not either overlook it or dismiss it out of hand.

Second, the Pension Fund cites Sixth Circuit opinions that it believes support its position that the Court erred in the Opinion. But these are the same citations and the same arguments that the Pension Fund made to the Court when the Court heard the Pension Fund's objection. All of these issues are covered by the Opinion. Rehashing the same arguments already rejected by the Court does not mean they are likely to prevail on appeal.

Third, the Pension Fund notes that the Sixth Circuit has never previously addressed the specific issue in the Opinion — that is, whether a purchaser of assets in a § 363 sale can obtain such assets free and clear of possible successor liability in the future to the Pension Fund. While it appears true that the Sixth Circuit has not considered this issue on specific facts before the Court, that does not mean that the Pension Fund has a strong or substantial likelihood of success on the merits of its appeal.

The Pension Fund raised a serious legal objection to the Debtors' sale motions. The Court carefully considered and rejected it in the Opinion. The Pension Fund has

not met its burden to show that it has a strong or substantial likelihood of success on the merits of its appeal.

2. <u>Will the Pension Fund suffer irreparable harm absent the stay?</u>

The Pension Fund argues that it will suffer irreparable harm if the Court does not stay the closings of the three sales that it has approved. First, the Pension Fund expresses concern that under § 363(m) of the Bankruptcy Code, a failure to obtain a stay may render its appeal moot if the sales become final. But that possibility exists with respect to every appeal from an order approving a § 363 sale. If the mere possibility that an issue may later become moot under § 363(m) were enough by itself to constitute irreparable harm to a party appealing from a sale order, bankruptcy courts would be required to grant a stay for every appeal of an order approving a § 363 sale. That is not the law. The potential application of § 363(m) to the Pension Fund's appeal by itself does not demonstrate irreparable harm.

The Pension Fund next argues that the "implications of this Court's Opinion are wide ranging, the impact of which will go beyond just this case," and that the effect of the Opinion "has the potential to cause the flood gates to open to other employers to seek Chapter 11 bankruptcy court protection" to sell their assets and cut off the Pension Fund's ability to pursue the purchaser of such assets. Apart from the total lack of any specifics, or identification of even one example, the Pension Fund's

generalized "flood gates" argument ignores the fact that there are already other reported decisions in which bankruptcy courts have held that a § 363 sale can be made free and clear under § 363(f) of successor liability for multi-employer pension plan withdrawal liability. See, e.g., In re Manhattan Jeep Chrysler Dodge, Inc., no. 18-10657, 2019 WL 1054928 (Bankr. S.D.N.Y. Mar. 4, 2019); In re Ormet Corp., no. 13-10334, 2014 WL 3542133 (Bankr. D. Del. July 17, 2014). In fact, while the Pension Fund tries to create the impression that the Opinion is somehow novel and contrary to settled law, the Pension Fund has not cited even one single case in which a request for a finding under § 363(f) that a sale be made free and clear of successor liability of a multi-employer pension fund has been denied based on the arguments made by the Pension Fund.

Finally, the Pension Fund argues that it will suffer irreparable harm because "other employers participating in the Pension Fund will obviously be harmed as well." But such harm is not obvious. The Pension Fund speculates about such harm without identifying *who* such employers are, *how* they will be harmed, and *when* they will be harmed. The generalized harm identified by the Pension Fund is purely speculative. The Pension Fund does not identify any specific injury, let alone one that will cause irreparable harm if the Opinion is not stayed.

-7-

19-43823-pjs    Doc 198    Filed 05/28/19    Entered 05/28/19 14:26:42    Page 7 of 11

### 3. Will a stay of the Opinion cause harm to other parties?

All three purchasers have made it an express condition to the closing of their respective sale that the Court enter an order with the free and clear finding requested in the sale motions. All three purchasers have stated that they will not close their respective sale if they have to wait for the Pension Fund's appeal to be decided. All three purchasers have also set a deadline in their purchase agreement for obtaining an order that authorizes the Debtors to close their respective sale with the express finding that the purchase will be made free and clear of potential successor liability in the future to the Pension Fund.

The consequences if these sales do not close are substantial.[2] Even the Pension Fund does not dispute that each of the three purchasers is paying the Debtors substantially more for these assets than the Debtors will receive if these assets have to be liquidated in a piecemeal fashion via an auction. Who bears the loss if the sales do not close? The Debtors' estates will receive less proceeds, which means that Chemical Bank, which holds a security interest on all of these assets, will receive substantially less. But the Debtors and Chemical Bank are not the only parties that will suffer. The less Chemical Bank is paid on account of its secured claim, the

---

[2] The affidavit of Kenneth R. Liabenow, one of the Debtors' principals (ECF No. 176), details and documents the reduced proceeds of the Debtors' assets that will be realized if the three sales are not closed.

greater its unsecured deficiency claim will be in the Debtors' bankruptcy cases. That means that any potential distribution for other unsecured creditors out of other assets in these cases (e.g., Chapter 5 recoveries) will be diluted. Unlike the speculative harm that the Pension Fund identifies based on its "flood gates" argument, the harm to the Debtors, Chemical Bank, and the other creditors of the Debtors' estates is immediate, real, quantifiable, and substantial.

4. <u>Where does the public interest lie?</u>

In the Opinion, the Court specifically noted that the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA") was enacted because of a concern that ERISA did not adequately protect multi-employer pension plans from the adverse consequences that result when individual employers terminate their participation and withdraw. The Court acknowledges the importance of the public policy evinced by the MPPAA. But granting the Motion and staying the closing of the sales will not promote that public policy.

To obtain the purchase agreements from CCI, Job Site, and Strength Environmental, the Debtors have gone through long and detailed marketing plans and procedures all of which were approved by the Court. There are no other offers for the Debtors' assets. If these sales do not close, the Debtors will be forced to liquidate all

of these assets by means of an auction, because there are no more funds to continue to operate these businesses during Chapter 11. None of these facts are disputed.

The only thing that will be accomplished by staying the sales is that the purchases by CCI, Job Site, and Strength Environmental will be lost. That means less money for the Debtors, Chemical Bank, and the other creditors in these cases, but it does not mean more money for the Pension Fund. If the sales do not close, the Pension Fund does not get one more dime than if the sales do close.

While the Pension Fund correctly points out that the MPPAA was enacted to prevent employers from shirking their obligations by fractionalizing operations to many separate entities, there is nothing about these three sales in these bankruptcy cases that allows the Debtors or any other party to do that. The Debtors either will or won't be liable for a withdrawal liability to be assessed by the Pension Fund without regard to whether the three sales close or do not close. Moreover, if the sales do not close, as requested by the Pension Fund, the Pension Fund has no recourse against any of the three purchasers if they do not buy the assets that they have agreed to purchase from the Debtors. None of these three purchasers is owned or controlled by any of the individuals that own, control, and operate the Debtors. They are all entirely unrelated entities against whom the Pension Fund presently has no basis to impose liability. Authorizing the Debtors to sell assets to these three unrelated purchasers, free and

clear of the risk of successor liability to the Pension Fund, does not conflict with any of the policies of the MPPAA. Instead, it furthers the policy of the Bankruptcy Code to maximize the value of a debtor's assets for distribution to creditors of the debtor in accordance with the priority scheme set forth in the Bankruptcy Code.

## Conclusion

None of the four factors that the Court is required to consider support the relief requested by the Pension Fund. To the contrary, all four factors militate in favor of denial of the Motion. For these reasons, together with the reasons set forth on the record by the Court at the hearing held on May 24, 2019, the Motion must be denied.[3] The Court has now done so by separate order (ECF No. 188) entered on May 24, 2019.

**Signed on May 28, 2019**



/s/ Phillip J. Shefferly
_____
Phillip J. Shefferly
United States Bankruptcy Judge

---

[3] Because the Court is denying the Motion's request for a stay, the Court need not reach the Debtors' argument that the Pension Fund should be required to post a bond if a stay is granted.